## Commonwealth v. Baker

*Dean A. Bowman,* of *Kimmel & Rascona,* special counsel for Commonwealth.
*John J. Dirienzo, Jr.,* for defendant.

COFFROTH, *P. J.,* May 23, 1975—This is an appeal by defendant from his summary conviction before a justice of the peace for criminal mischief under the Crimes Code of December 6, 1972, P.L. 1068, 18 P.S. §3304, for intentionally killing the dog of the prosecutrix without justification.

## FACTS

The prosecutrix released her two-year-old German Shepherd dog from her house on East Fairview Street to run free in the yard and in an adjacent vacant field, as was her custom. The dog was licensed, but was not wearing the license at the time. She testified that the dog was a female house pet, of unusually docile nature, used to crouching timidly at the approach of strangers. She was corroborated in this by her veterinarian who knew and had cared for the dog professionally.

Instead of staying on the premises of the prosecutrix and in the adjacent field, the dog wandered onto defendant's property located nearby, within the same block as the residence of the prosecutrix but not adjoining her. The dog had not been previously seen by defendant, nor was she known to have gone there before. She entered the house or enclosure which defendant had made on the back of his

lot for his dog who was tied nearby. Defendant had previously seen another trespassing dog or dogs back there, had complained to the police and had been informed to confine the straying dog and call the police. When defendant saw the dog of prosecutrix at the back of his lot in the dog enclosure, he went into the house and obtained his .22 calibre rifle, and went back toward the dog; he had the rifle in one hand and a wooden board in the other. According to defendant's testimony, as he moved toward the dog, the dog ran toward him barking, which led defendant to believe he would be attacked, whereupon when he was 10 feet to 20 feet away he shot the dog, causing its death.

The veterinarian performed an autopsy on the dog which showed that the bullet entered the body near the top of the right shoulder blade and went downward and forward into the dog's throat or neck. The bullet had struck some bone but was deflected only slightly in its path through the body.

## DISCUSSION

A large segment of Americans love dogs, and lavish upon them material substance and much tender loving care. Another segment regards this devotion with something less than approval. Most property owners resent the trespasser, man or beast. The killing of a loved pet animal, which has trespassed unwanted upon the property of another, is, therefore, bound to arouse emotions on both sides, often generating more heat than light. Judges are not immune to feelings in such cases, but are sworn to set them aside and instead to follow the law, which we will now do in resolving this case.

The Dog Law of 1965, Act of December 22, 1965, P.L. 1124, 3 P.S. §460-101, et seq., establishes these relevant rules:

(1) If a dog is running at large, unaccompanied by the owner or keeper, on another's property, any *police officer* finding such dog must seize and detain it; if the dog "is deemed after due consideration by the police officer to constitute a threat to the public health and welfare," the *officer* may kill it: 3 P.S. §460-301.

(2) A dog seen by *any person* in the act of pursuing, worrying or wounding any livestock, or wounding or killing poultry, or *attacking human beings,* may be killed *by such person*: 3 P.S. §460-501.

(3)´ If a dog is declared in proper legal proceedings to be vicious, the owner must keep it confined; if it is permitted to run at large, the owner is subject to fine and the dog may be killed by any *police officer*: 3 P.S. §460-501.

The foregoing are the three situations in which a dog running at large may be killed. It is obvious that no right is given to a property owner to kill a dog merely for trespassing, licensed or unlicensed. The property owner may kill a trespassing dog only when it is seen involved as above stated with livestock or poultry or attacking human beings. It follows that if this dog was attacking defendant, he was legally permitted to kill it, otherwise not.

The provisions of the Crimes Code recognize that if defendant acted in self-defense, he is justified in killing or injuring the dog in order to prevent the attack upon himself: 18 Pa.C.S.A. §510 Restatement 2d, Torts §261. See also 3A C.J.S., Animals, §322.

The test of whether defendant's conduct in killing the dog was justifiable depends upon whether: (1)

defendant believed the dog was going to attack him, and (2) if so, whether such belief was reasonable, and (3) if reasonable, whether killing was reasonably necessary under the circumstances.

The justice of the peace concluded that the killing was not justified. We agree, on the basis of the following salient facts:

(a) Defendant went into the house and obtained the gun as soon as he saw the dog at the back of his lot and before the dog noticed him or gave defendant any reason to believe he would be attacked; and

(b) When the dog came toward defendant, he dropped the board and used the gun without making any attempt to ward off attack with the board; and

(c) The autopsy showed that the course of the bullet in the dog's body was from rear to front and downward, which is consistent only with a shooting while the back of the dog was toward the gun and consistent with the timid disposition of the dog, and inconsistent with defendant's testimony that the dog was coming toward him when he shot; and

(d) Defendant's failure to state that the dog attacked him, when the prosecutrix spoke with defendant following the shooting; that explanation was advanced for the first time at the trial before the justice of the peace.

These admitted facts lead us to conclude that the dog was not attacking defendant, that the shooting was not justified and that the Commonwealth has made out the elements of the offense charged beyond a reasonable doubt.

In Commonwealth v. Loverso, 88 D. & C. 261 (1954), the court was faced with a similar case. There, the court also rejected the claim of justifica-

tion and found defendant guilty, saying, at page 264:

"Were the actions of the dog in this case of such a nature as to really make a person of reasonable intelligence believe that this dog was about to attack him? If so could not defendant have resorted to less drastic action to protect himself? . . . We do not believe that the actions of the dog in this case were sufficient to cause a reasonable person to believe that the dog was actually going to attack or bite him."

It goes without saying that as between the safety of man and the safety of an animal, we give priority to the former and resolve all doubts in favor of the exercise of the right of self-defense against attack. The person under attack will not be held to the same standard of judgment in shooting a dog as he would be in shooting a human, even in self-defense. But the combination of facts in this case removes all doubts and brands this killing as unjustified, and the defense could offer no means of squaring defendant's testimony with that of the veterinarian.

We hasten to add that nothing we have said here should be taken as approving in any way letting a dog run loose upon other people's property, with which we are, indeed, most unsympathetic. We, therefore, will not approve the sentence of restitution imposed by the justice of the peace. On appeal from a summary conviction, it is the responsibility of the Common Pleas Court to fix the sentence. See Commonwealth v. Baker, 29 Somerset 261, 269 (1974).

## ORDER

Now, May 23, 1975, we find defendant guilty as charged. Defendant is sentenced to pay the costs of

prosecution and a fine of $50 and in default thereof to undergo imprisonment in the county jail for a period of five days.